UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK HINKLEY,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]<br><br>　　　　　　　　　　Defendant. | Case No.: 18CV2512 JAH<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br>**[Doc. Nos. 20, 21]** |

## INTRODUCTION

Plaintiff Mark Hinkley seeks review of the Social Security Commissioner's final decision denying benefits. After a thorough review of the parties' submissions and for the reasons set forth below, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendant's cross-motion for summary judgment.

## BACKGROUND

Plaintiff was born on February 19, 1956 and was 61 years of age at the time of the hearing before the Administrative Law Judge ("ALJ"). AR[2] at 38. He alleged his disability

---

[1] Dr. Kilolo Kijakazi is named in place of Nancy A. Berryhill as Commissioner of Social Security Administration, pursuant to Fed. R. Civ. P. 25(d).
[2] AR refers to the administrative record lodged with the Court at Doc. No. 13.

1

began on April 19, 2012. *Id*. at 18, 68. He filed an application for benefits and supplemental security income on September 9, 2014. *Id*. at 188–212. The Commissioner denied the claims on February 19, 2015 and denied the claims again upon reconsideration. *Id*. at 117–21, 126–31. Plaintiff requested a hearing and testified at the hearing on July 5, 2017. *Id*. at 34, 133. The ALJ issued an unfavorable decision on October 30, 2017. *Id*. at 15, 18–28. Plaintiff filed a request for review of the ALJ's decision and the Appeals Council denied the request on August 28, 2018. *Id*. at 1.

Plaintiff, appearing through counsel, filed a complaint seeking review of the Commissioner's final decision denying benefits on November 1, 2018. *See* Doc. No. 1. Defendant filed an answer and the administrative record on March 11, 2019. *See* Doc. Nos. 12, 13.

Thereafter, Plaintiff filed the pending motion for summary judgment, Doc. No. 20 ("Mot."), and Defendant filed an opposition and cross-motion for summary judgment. Doc. No. 21 ("Cross-Mot."). Plaintiff filed a reply. Doc. No. 22 ("Reply").

## DISCUSSION

### I. Legal Standards

### A. Qualifying for Disability Benefits

To qualify for disability benefits under the Act, an applicant must show that: (1) he suffers from a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) the impairment renders the applicant incapable of performing the work that he previously performed or any other substantially gainful employment that exists in the national economy. *See* 42 U.S.C. § 423(d)(1)(A), 2(A). An applicant must meet both requirements to be "disabled." *Id*.

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied. 20 C.F.R. §§ 404.1520(b),

416.920(b). If he is not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the impairment is severe, the evaluation proceeds to the third step, which determines whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d); 20 C.F.R. Part 404 Appendix 1 to Subpart P. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If a condition "falls short of the [listing] criterion," a multiple factor analysis is appropriate. *Celaya v. Halter,* 332 F.3d 1177, 1181 (9th Cir. 2003). Of such analysis, "the [Commissioner] shall consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." *Id.* at 1182 (quoting 42 U.S.C. § 423(d)(2)(B)). If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant cannot perform his previous work, the fifth and final step of the process determines whether he is able to perform other work in the national economy considering his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

**B. Judicial Review of an ALJ's Decision**

Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C. § 405(g). The scope of judicial review is limited. The Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error." *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (citing *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla but less than a preponderance." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985)). If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (citing *Allen v. Secretary of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984)). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the [Commissioner]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (citation omitted).

However, even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the Court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching a decision. *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (citation omitted). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Commissioner for further proceedings. *Id*. "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (quoting *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981)).

**II. The ALJ's Decision**

In the present case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 19, 2012 and has severe impairments, including diabetes mellitus, arteriosclerotic coronary artery disease, status post myocardial infarction, kidney disease, and status post below knee amputation of the left lower extremity secondary to diabetic

foot infection. AR at 20. The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or are medically equal in severity to one of the listed impairments in 20 CFR Part 404 Subpart P, Appendix 1. *Id*. at 24.

The ALJ found Plaintiff has a residual functional capacity

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for no push, pull or operation of foot controls with the left lower extremity, occasional balancing and stooping; occasional climbing ramps and stairs; no kneeling, crouching or crawling; no climbing ladders, scaffolds or ropes; avoid concentrated exposure to extreme cold and vibrations; and even moderate exposure to hazards (e.g. moving machinery and unprotected heights).

*Id*. Additionally, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms not entirely credible because "he has been able to care for his 85 year old mother who is totally dependent on him because of Alzheimer's disease," Plaintiff "exercises daily with activities that include stretching and walking," the objective evidence did not support the degree alleged, Plaintiff "has a normal gait and does not require any assistive devices to ambulate," the objective medical evidence showed Plaintiff's medications were relatively effective in controlling his symptoms, and there was no evidence of weight loss, sleep deprivation, or cognitive deficits due to pain or depression. *Id*. at 24–25.

The ALJ also found that Plaintiff does not have any severe mental impairment. *Id.* at 22–26. In reaching this conclusion, the ALJ gave little weight to the opinion of Plaintiff's attending psychologist, Chad Hybarger, and significant weight to the opinions of the State agency medical consultant assessments dated February 19, 2015 and July 9, 2015. *Id*. at 26. According to the ALJ, the State agency medical consultants' conclusion that Plaintiff does not suffer from a severe mental impairment was supported by Dr. Hybarger's progress notes, the progress notes of other treating sources, Plaintiff's sporadic mental health treatment, and Plaintiff's own denials of depression and anxiety. *Id.* at 26.

The ALJ determined that Plaintiff is able to perform his past relevant work as an attorney, superintendent of schools, and principal, at least as typically done in the national

economy. *Id*. 27–28. Ultimately, the ALJ concluded Plaintiff has not been under a disability as defined by the Act from April 19, 2012. *Id*. at 28.

## III. Analysis

Plaintiff contends that the ALJ erred in primarily three ways. First, he argues that the ALJ erred in finding that Plaintiff lacks a severe mental impairment. Specifically, Plaintiff takes issue with the ALJ's decision to give little weight to the opinion of Dr. Hybarger. Second, he claims that the ALJ erred by concluding that Plaintiff does not satisfy Listing 1.05 despite his below knee amputation. Third, he argues that the ALJ was wrong to conclude that he has the residual functional capacity to perform his past relevant work. The Court will consider each argument in turn.

### A. Plaintiff's Mental Impairment

Plaintiff argues that substantial evidence exists in the record showing he is severely impaired by major depressive disorder and anxiety. Plaintiff relies on Dr. Hybarger's mental functional assessment dated June 26, 2017 which opined that due to his depression, Plaintiff would be absent from work more than three times per month and would be off task more than 20 percent of the time. AR at 26. Dr. Hybarger also found that Plaintiff has "marked" limits in the ability to understand, remember and carry out information as well as concentrate, persist and maintain pace. *Id.* The ALJ, however, gave Dr. Hybarger's opinion little weight. He explained that Dr. Hybarger's opinion was inconsistent with his earlier progress notes and that of other treating sources. The ALJ also considered Plaintiff's sporadic mental health treatment and his own denials of depression and anxiety in concluding that Plaintiff does not experience severe mental impairment. Defendant maintains that the ALJ properly weighed the evidence and reached a conclusion supported by substantial evidence in the record.

"[A]s a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003) (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected

only for "clear and convincing" reasons supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record. *Id*. The ALJ can "meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Sec'y of Health and Hum. Servs.*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). "Where the opinion of the claimant's treating physician is contradicted, and the opinion of a non-treating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the non-treating source may itself be substantial evidence[.]" *Andrews*, 53 F.3d at 1041. In addition, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

  Here, the ALJ properly discounted the opinion of Dr. Hybarger by providing clear and specific reasons which are supported by record evidence. The ALJ observed that the State medical assessments concluded that Plaintiff does not have a severe mental impairment. *See* AR at 73, 98. The ALJ, however, did not rely exclusively on these opinions, but instead considered the record as a whole. For example, the ALJ viewed Dr. Hybarger's June 2017 assessment of Plaintiff in the context of Dr. Hybarger's entire treatment history of Plaintiff. Dr. Hybarger began treating Plaintiff in 2013 and diagnosed him with dysthymic disorder. *Id*. at 22. He saw Plaintiff approximately six times in a span of four years. *Id.*; Cross-Mot. at 5. Four of those visits occurred in 2013, within weeks of each other. AR at 22. Dr. Hybarger saw Plaintiff once in February 2015 and once in June 2017. *Id*. Although some of Dr. Hybarger's progress notes showed Plaintiff experienced anhedonic depression, feelings of worthlessness, and social withdrawal, the ALJ pointed out that later notes showed "anhedonia was extinguished," "more energy," and an "upswing." AR at 22.

In addition, a different psychologist, Dr. Heidi Brunetto, examined Plaintiff's mental state in June 2017. *Id.* at 26. Dr. Brunetto assessed Plaintiff with depressive disorder. *Id.* at 700. The ALJ characterized her examination of his mental health as "unremarkable." *Id.* at 26. Dr. Brunetto's mental health exam found Plaintiff "well groomed," "cooperative," with "regular" speech, "euthymic" affect, "coherent" thought processes, no memory problems, "alert" orientation, "good" insight, and "good" judgment. *Id.* at 699–700.

The ALJ also relied on Plaintiff's own statements to his treating sources that he was not depressed or anxious. *See id.* at 22 (describing Plaintiff's representations in April, September, and November 2016). Furthermore, the ALJ considered the sporadic nature of Plaintiff's "limited mental health treatment," including "no records of mental health treatment after February 2015 and until June 2017," to weigh against a finding of severe mental impairment. *Id.*; *see Malloy v. Colvin*, 664 F. App'x 638, 641 (9th Cir. 2016) (affirming ALJ finding of no severe mental impairment where "record showed 'minimal and inconsistent treatment'"). Because the ALJ's articulated reasons find support in the record, the Court will not disturb its conclusion that Plaintiff is not severely mentally impaired.

Plaintiff's arguments to the contrary are unavailing. First, Plaintiff argues that a patient's positive progress in treatment is insufficient on its own to conclude that he is not severely impaired. Reply at 2 (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)). *Holohan* stands for the proposition that in considering the severity of an applicant's mental health, an ALJ cannot cherry-pick a few instances of improvement but must instead consider "the overall diagnostic picture." *Id.* In this case, the ALJ did consider the entire picture of Plaintiff's mental health. In giving little weight to Dr. Hybarger's opinion, the ALJ took into account not just Dr. Hybarger's previous notes showing Plaintiff's mental health progress, but also Dr. Brunetto's contemporaneous mental status exam, Plaintiff's own denials of depression and anxiety, and his sporadic mental health treatment. AR at 24–26.

Second, Plaintiff argues that Dr. Brunetto's opinion should be given little weight because the June 1, 2017 meeting was only "a brief visit to establish care." Mot. at 24–25; *cf. id.* at 8 (admitting that purpose of this visit was "treatment for depression"). He claims that the ALJ should have given Dr. Hybarger's opinion more weight because he treated Plaintiff "over the course of several years." *Id.* Plaintiff's argument would have some force if these two conflicting opinions consisted of the only relevant evidence in the record. But that is not the case here. The ALJ properly considered Dr. Brunetto's opinion along with other evidence in the record to discount Dr. Hybarger's opinion. *See Reddick*, 157 F.3d at 725 (noting that when "the treating doctor's opinion is contradicted by another doctor," the ALJ may reject the former's opinion by providing "specific and legitimate reasons" supported by the record).

Third, Plaintiff argues that his denials of depression and anxiety are insignificant because he made them in meetings with treating sources who specialized in treating his physical, not mental, impairments. The Court is unpersuaded. It may make sense to weigh doctors' opinions differently in a situation where expertise on a given subject matter is relevant. But Plaintiff fails to cite any caselaw supporting the notion that *self-reported statements* should be given more or less weight depending on what kind of doctor they are directed toward. Nor did Plaintiff provide the ALJ or this Court any reason to believe that he was misrepresenting his mental health at the time he made those remarks. The ALJ properly considered Plaintiff's denials and weighed them in the context of the entire record.

In short, the ALJ provided a detailed and thorough summary of the facts and evidence and an interpretation of the evidence to support the findings. Plaintiff disagrees with the ALJ's interpretation and findings and points to evidence he believes supports Dr. Hybarger's opinion. But the proper inquiry is not whether some evidence in the record supports Plaintiff's claim of severe mental impairment. Where, as here, the evidence is open to more than one rational interpretation and the ALJ's findings are supported by substantial evidence, the ALJ's decision must be upheld. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**B. Plaintiff's Qualification for Listing 1.05**

Plaintiff argues that the ALJ erred by finding that he did not meet Listing 1.05. Listing 1.05(B) requires amputation of "one or both lower extremities at or above the tarsal region, with stump complications resulting in medical inability to use a prosthetic device to ambulate effectively . . . which have lasted or are expected to last for at least 12 months." 20 C.F.R. Pt. 404, Subpt. P, App. 1.[3] The regulation explains that "[t]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(B)(2)(b)(2). At the hearing, Plaintiff testified that he lacked strength and vitality and that while wearing his prothesis, he experienced poor fit, sores, and wounds. AR at 42–43. The ALJ, however, concluded that Plaintiff did not satisfy Listing 1.05. *Id.* at 24. He explained that although Plaintiff initially had trouble with his prosthesis after his below knee amputation, he has done well managing that area of his body and can ambulate with a prosthesis. *Id.* at 27. The ALJ found that Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the objective evidence. *Id.* at 24. Defendant claims that the ALJ discussed the pertinent evidence and reached a decision supported by substantial evidence in the record.

The ALJ's credibility finding must be properly supported by the record and "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)

---

[3] The Listing of Impairments has been updated over the last few years. *See, e.g.*, Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed. Reg. 78164-01, 2020 WL 7056412 (Dec. 3, 2020); *Christopher I. v. Kijakazi*, No. 2:21-CV-00723-CMR, 2023 WL 2586212, at *2 (D. Utah Mar. 21, 2023) (describing Listing 1.05B's update effective 2021). Those updates do not affect the analysis here because on judicial review, "the regulations in place . . . when the ALJ's decision became final, govern." *Wood v. Berryhill*, 692 F. App'x 816, 817 n.1 (9th Cir. 2017); *see also* 85 Fed. Reg. 78164-01 n. 2 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions."). Here, the ALJ's decision became final in 2018. AR at 1. Thus, the Court will assess Plaintiff's argument concerning Listing 1.05 by applying the same standard that the ALJ used in 2018.

(citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991) (en banc)).  An ALJ may consider a claimant's "reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).  "While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).  Unless an ALJ makes a finding of malingering based on confirming evidence, the ALJ may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each. *Id*.

   Here, the ALJ's finding that Plaintiff did not satisfy Listing 1.05 is supported by substantial evidence in the record.  As Plaintiff acknowledges, "[t]he claimant has the burden of proving that he . . . has an impairment or combination of impairments that meets or equals the Listings." Reply at 8 (citing *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)).  The ALJ found that "[i]n contrast to the allegations of the claimant's disabling pain and weakness, he does not exhibit any significant atrophy, loss of strength, or difficulty moving that are indicative of severe and disabling pain.  He has a normal gait and does not require any assistive devices to ambulate."   AR at 25.  The ALJ cited extensively to the record to support his conclusion.  He cited a March 2016 progress note from a treating source showing that "the claimant has done well managing his below knee amputation and the ability to ambulate with a prosthesis." *Id.* at 21.  At times, Plaintiff experienced pressure and soreness under the prosthesis, but the record shows that the pain was "mild," "the wounds were small, did not track to the bone," and that "padding" and "topical cream helped improve the pressure sore." *Id.*  A progress note dated June 2017 showed "no signs of wounds or other stump problems." *Id.* at 27.  The ALJ also relied on record evidence indicating that Plaintiff cares for his 85-year old mother who is totally

dependent on him because of Alzheimer's disease, and that he exercises daily with activities that include stretching and walking. *Id.* at 24–25.

Plaintiff claims that the ALJ's conclusion is erroneous because he "took exactly one paragraph to dispose of Listing 1.05." Reply at 9. But in fact, the ALJ discussed Plaintiff's below knee amputation and his ability to walk with a prosthesis in detail throughout his findings of fact and conclusions of law. *See* AR at 20–27. The ALJ provided clear and convincing reasons to not fully credit Plaintiff's subjective account of his mobility. Therefore, the ALJ's decision will be upheld.

## C. Residual Functional Capacity to Perform Past Work

Lastly, Plaintiff contends that the ALJ erred in concluding that he had the residual functional capacity to perform his past work as a superintendent of schools, principal, and lawyer. At the hearing, the vocational expert classified Plaintiff's work as a lawyer as sedentary and his work at his charter school as a composite job composed of: (1) superintendent (sedentary); (2) principal (light); and (3) teacher (light). AR at 28. Plaintiff argues that because the ALJ established that Plaintiff's residual functional capacity is sedentary, he erred in concluding that Plaintiff could still perform his job as a principal, which requires a light exertion level. Defendant responds that this is inconsequential because the ALJ also found that Plaintiff could perform past relevant work as a lawyer and superintendent.

Plaintiff's argument has merit, but so does Defendant's counterargument. The ALJ's conclusion that Plaintiff could perform his job as a principal contradicts his finding that Plaintiff can only engage in sedentary work. Nonetheless, this error is harmless because it is "inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). The ALJ properly found that Plaintiff can perform his past relevant work as an attorney and superintendent, at least as typically done in the national economy. AR at 27–28, 57–58. Plaintiff does not dispute that these two positions are both sedentary. *See Romo v. Berryhill*, 731 F. App'x 574, 579 (9th Cir. 2018) (affirming ALJ's step four analysis despite harmless error in past relevant

work finding because alternative past relevant work was viable). Thus, the ALJ's conclusion that Plaintiff can perform past relevant work will not be disturbed.

### CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

    1. Plaintiff's motion for summary judgment (Doc. No. 20) is DENIED;

    2. Defendant's cross-motion for summary judgment (Doc. No. 21) is GRANTED;

    3. The Clerk of Court shall enter judgment accordingly.

DATED: June 23, 2023

_____
JOHN A. HOUSTON
United States District Judge